THE POTTSVILLE.*

*(District Court, E. D. Pennsylvania. May 5, 1882.)*

1. ADMIRALTY—COLLISION—NEGLIGENCE—LOOKOUT.

A steam-ship moving at the rate of four miles an hour, in a rough sea and dense fog, on a frequented part of the Atlantic coast, collided with and sank a schooner. At the time of the collision the only lookout on the steamer was a boy 16 years of age, who had been upon the water but a few weeks. *Held,* that the steam-ship was liable for the damage: *First,* because under the circumstances the utmost caution was required, and four miles an hour was too great a speed, being more than was necessary for steerage way; and, *second,* because it was culpable negligence to have an inexperienced boy as lookout.

In Admiralty. Libel for collision.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

The facts were as follows:

On June 9, 1881, at about 5:10 A. M., the steam-ship Pottsville collided with the schooner Joseph and Franklin in the Atlantic ocean, between Hereford inlet and Five Fathom bank light-ship. At the time of collision the course of the steam-ship was about S. W. by W.; that of the schooner N. N. E. The wind was light and from the eastward; the sea was rough, and there was a dense fog. The schooner had a competent lookout, and the master himself was in charge of the deck. The fog horn was continually sounded. The steam-ship was going at the rate of four miles an hour and had but one lookout, a boy of 16 years of age, who had had some five weeks' experience afloat. The whistle of the steam-ship was blown every minute. The direction of the wind was such as to increase the acoustic properties of the steam-whistle and to diminish those of the fog horn. The whistle of the steam-ship was heard on board the schooner some time before the collision, and the course of the schooner was kept unchanged. The fog horn of the schooner was not heard on the steam-ship until immediately prior to the collision, and was then promptly reported by the lookout. The schooner was seen an instant after, about 40 yards distant. The wheel of the steam-ship was put hard a-port, and she was stopped and backed under full speed. Immediately afterwards the schooner was struck and subsequently sank.

The libellant contended that the steam-ship was going at a higher rate of speed than was necessary for steerage way or consistent with safety in such weather and locality, and that it was negligence, under the circumstances, to entrust the position of lookout to a boy of little experience. The respondents contended that the steam-ship could not have been handled at a less rate of speed; that the schooner was seen by the boy on lookout as soon as it was possible for any one to have seen her; and that the collision was the result of inevitable accident, neither party being at fault.

*Theodore M. Etting* and *Henry R. Edmunds,* for libellant.

*Thomas Hart, Jr.,* for respondent.

BUTLER, D. J. The burden of proof is on respondent. Having run the libellant down, she must prove it was not her fault. The answer charges it to libellant's failure to signal. On the argument it was attributed to this cause, and to inevitable accident.

I cannot doubt that the schooner signaled, as required by law. Her testimony puts this beyond question.

That the accident was inevitable I do not believe. It may properly be attributed, I think, to want of care in respondent. The circumstances were such as to call for the highest degree of vigilance. A dense fog prevailed, the sea was rough, and the respondent was steaming on one of the most frequented parts of the Atlantic coast, —momentarily liable to find vessels directly in her way. That she was not vigilant is clear. At the time of collision the only person forward, on deck, was a boy of 16 years, with no experience, having

been upon the water but a few weeks. To entrust the responsible and delicate duty of lookout, in such weather, and in such a place, to this raw youth, was culpable negligence. It is said, however, that this had no influence upon the result, or accident, that he saw the schooner as early as she could be seen through the fog, and heard her horn as soon as it was blown. If this were true, the fact would remain that respondent had been negligent of a most important duty, under circumstances requiring the greatest care, justly casting serious doubt over the entire defence. I do not, however, believe it is true. An experienced seaman, alive to the dangers of the situation, and the necessity for extraordinary vigilance, would doubtless have discovered the schooner's presence in time to avoid the collision. In respect to speed also, I believe the respondent failed in duty. It cannot well be doubted that she was moving at the rate of four miles an hour, and I think upwards, while her progress should have been no greater than was actually necessary to afford steerage way. It is true, her witnesses say her speed was no greater than necessary for this purpose; but I think the conclusion is quite reasonable that she might have controlled her course at a lower rate. Whether under the peculiar circumstances of weather and place, it was her duty occasionally to stop, as the captain of the Arbutus, who was a short distance off did, need not be determined. It very clearly was her duty to proceed with the utmost caution, feeling her way, and endeavoring by every practicable means to avoid the dangers known to be in her path. In this duty I believe she failed.

A decree must be entered for libellant with costs.

The court propounded certain questions to a nautical expert called as an assessor, which, with the answers thereto, were as follows:

*First.* Under the circumstances stated by the Pottsville's officers, at and preceding the collision involved in this case, was it prudent to entrust the duty of lookout to a boy of 16, with but a few weeks' experience on the water? *Answer.* There are no circumstances under which a vessel can be placed that require more vigilance on the part of the lookout than in a dense fog, as is described by the officers of the Pottsville, and she, being at the time in the track of vessels bound up or down the coast, the danger of collision was great, and too much precaution could not be taken; it was therefore imprudent to entrust the duty of lookout to an inexperienced boy. On the contrary, under the circumstances, more than ordinary caution should have been used. To detect an object through a fog, the range of vision should be confined to as narrow a limit as possible. It would therefore have shown no extraordinary caution had two men been placed on the lookout, one looking from each bow. In fact, in a dense fog, all the watch on deck should constitute a lookout.

*Second.* Would an experienced seaman have been likely to see the schooner or discover her presence earlier than this boy? *Answer.* An experienced seaman, accustomed to looking for and seeing vessels under all circumstances, and listening for signals in fogs, would be more likely to see a vessel and distinguish a signal, and locate the direction from which the sound came, than an inexperienced person.

*Third.* Do you know the Pottsville? *Answer.* I know the steamer Pottsville.

*Fourth.* If you do, state whether under the circumstances detailed by her officers, as existing at the time, she could or could not have controlled her course at a lower rate of speed than four miles an hour? *Answer.* In regard to the rate of speed under which the Pottsville could have controlled her course, under the circumstances as stated, I see no reason why the steamer going three miles an hour should not have been under perfect control.